IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

MONAVIE, LLC, a Utah limited liability
company,                                  )
                                          )
                                          )
          Plaintiff,                      )
                                          )
          vs.                             )
                                          )
                                          )
QUIXTAR INC., a Virginia corporation,     )
and AMWAY CORP., a Delaware               )
corporation,                             )
                                          )
          Defendants;                     )
_____     )
                                          )
GEORGE and JILL GUZZARDO, et al.,         )
                                          )
                                          )
          Plaintiffs,                     )
          vs.                             )
                                          )
QUIXTAR INC., now known as                )
AMWAY CORP., a Virginia corporation,     )
and AMWAY CORPORATION, now                )
known as Amway International, Inc., a      )
Delaware corporation,                     )
                                          )
          Defendants.                     )

Civil Nos. 2:08-CV-0204 BSJ
           2:08-MC-0762 BSJ
           2:09-CV-0259 BSJ
           2:09-CV-0209 BSJ
           (consolidated)

**MEMORANDUM OPINION &
ORDER RE: MOTION TO DISMISS,
MOTION TO STAY & MOTION FOR
PRELIMINARY INJUNCTION
(Fed. R. Civ. P. 12(b)(1), 9 U.S.C. § 3 &
Fed. R. Civ. P. 65(a))**

```
┌─────────────────────────────────────┐
│            FILED                     │
│  CLERK, U.S. DISTRICT COURT          │
│  October 26, 2009 (11:12am)          │
│     DISTRICT OF UTAH                 │
└─────────────────────────────────────┘
```

* * * * * * * * *

George and Jill Guzzardo, together with twenty-six other named plaintiffs (the "Guzzardo

Plaintiffs"), filed a class-action complaint for declaratory and injunctive relief against the Amway

defendants ("Amway") under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d),

which grants federal district courts subject-matter jurisdiction over class actions with at least five

million dollars in controversy.   They seek a class-wide determination that Amway's arbitration

agreement, non-competition, non-solicitation, and trade secret rules are unenforceable, and injunctive relief precluding Amway from proceeding in arbitration upon claims against the Guzzardo Plaintiffs and the plaintiff class.

The parties have briefed, offered evidence and argued a series of motions pertaining to this lawsuit, consolidated into the above-captioned proceeding upon this court's own motion. Following an extensive Pretrial Conference, Amway's attempted interlocutory appeal, and a seven-day evidentiary hearing, the motions were submitted to this court for decision.

## I.  AMWAY'S RULE 12(b)(1) MOTION TO DISMISS

Under CAFA, federal district courts have subject matter jurisdiction over cases in which the amount in controversy exceeds $5 million, the class contains at least 100 members, and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B).  "Congress expanded diversity jurisdiction through CAFA to allow for federal court jurisdiction over class actions satisfying the statute's amount in controversy and minimal diversity requirements."  *In re Hannaford Bros. Co. Customer Data Security Breach Litigation*, 564 F.3d 75, 77 (1st Cir. 2009).

Pursuant to 12(b)(1) of the Federal Rules of Civil Procedure, Amway moved to dismiss the Guzzardo Plaintiffs' complaint, asserting a lack of subject matter jurisdiction because of the absence in the pleading, as originally filed, of an express assertion of an amount in controversy in excess of five million dollars, as required under 28 U.S.C. § 1332(d)(2).[1]  The Guzzardo Plaintiffs then filed an amended complaint expressly alleging that "[t]he aggregated matter in

---

[1] 28 U.S.C. § 1332(d)(2) provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."

controversy requirement of $5,000,000 is satisfied by reference to the value of claims and costs in the underlying arbitration proceedings," and "further aggregated by the value of the requested injunctive and declaratory relief sought by the Class Members," (Plaintiffs' Amended Class Action Complaint, filed April 22, 2009 (dkt. no. 393) (Guzzardo Amd. Cmplt."), at 11 ¶ 19(d)), to which Amway responded that "[p]laintiff[s] can never meet their threshold burden of establishing jurisdiction,"  (Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), filed April 29, 2009 (dkt. no. 404) ("Amway 12(b)(1) Reply Mem."), at 1, and that "[n]either the moving papers nor the opposition relied on any extrinsic facts" requiring any factual determination by this court under Rule 12(b)(1).   (Defendant Amway Corp's Supplemental Memorandum in Support of Motion to Dismiss and Motion to Stay Under 9 U.S.C. § 3, filed June 30, 2009 (dkt. no. 542) ("Amway Supp. Mem."), at 1.)[2]  According to Amway, "there are no facts to find."  (*Id.* at ix.)

In *Paper, Allied-Industrial , Chem. & Energy Workers Intern. Union v. Continental*

---

[2]Besides the sufficiency of the pleading of the original complaint, Amway seeks dismissal of the Guzzardo Plaintiffs' amended complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on these grounds: (1) the Guzzardo Plaintiffs have failed to "show it is not a legal certainty that the claim is less than" the five- million-dollar amount in controversy required under CAFA, 28 U.S.C. §1332(d) (Amway 12(b)(1) Reply Mem. at 1); (2) the lack of a certified plaintiff class under CAFA (*id.* at 3); and (3) the Anti-Injunction Act, 28 U.S.C. § 2283, bars the Guzzardo Plaintiffs' claim for injunctive relief (*id.* at 3-5).  Amway also asserts that this action should be stayed or dismissed as a matter of comity (because the relief sought would contradict prior rulings by federal and state courts), that abstention under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), is proper; and that the Guzzardo Plaintiffs' claims are barred by res judicata and/or collateral estoppel.  Of course, the latter grounds—comity, *Brillhart* abstention, res judicata and collateral estoppel—do not raise Rule 12(b)(1) jurisdictional defects.  *See, e.g.*, *United States v. City of Las Cruces*, 289 F.3d 1170, 1171 (10th Cir. 2002) (*Brillhart* abstention discretionary); *United States v. Tsosie*, 92 F.3d 1037, 1040 (10th Cir. 1996) (observing that "concerns of comity do not present a jurisdictional bar"); *Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.)*, 385 F.3d 1279, 1286 (10th Cir. 2004) ("[R]es judicata is not a jurisdictional bar; it is an affirmative defense . . . .") (internal quotation omitted); *cert denied*, 546 U.S. 814 (2005).  Likewise, it appears to be the law in this Circuit that "[t]he Anti-Injunction Act is not a jurisdictional statute; '[i]t merely limits [the district courts'] general equity powers in respect to the granting of a particular form of equitable relief.'"  *Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) (quoting *Smith v. Apple*, 264 U.S. 274, 279 (1924)).

*Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005), the Tenth Circuit explains that as a "general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks." *Id.* at 1292 (*citing Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)).  A defendant makes a *factual* attack where "the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends." *Id.* (*citing Holt* 46 F.3d at 1002-03).  A factual attack requires the court to look beyond the face of the amended complaint and allows the court wide discretion in considering documentary and testimonial evidence as to jurisdictional facts. *Id.*

Amway's initial *facial* attack as to the pleading of the § 1332(d) jurisdictional amount having been deflected by Paragraph 19 of the Amended Complaint, its assertion in reply that the Guzzardo Plaintiffs "still fail to 'show it is not a legal certainty that the claim is less than the jurisdictional amount,'"[3] necessarily goes to "the facts upon which subject matter jurisdiction depends," and is thus a substantive *factual* attack calling upon this court to make at least a preliminary determination as to the underlying jurisdictional facts.

As the Tenth Circuit has instructed us:

> The rule governing dismissal for want of jurisdiction in federal court is that, unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith. *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938).  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *Id.*  The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount. *See Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir.1994).  A plaintiff's allegations in the complaint alone can be sufficient to make this showing.  "Although allegations in the complaint need not be specific or technical

---

[3](Amway 12(b)(1) Reply Mem. at 1 (quoting *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000)).)

in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1272 (10th Cir. 1998) (quoting *Gibson v. Jeffers*, 478 F.2d 216, 221 (10th Cir. 1973)).

*Adams*, 225 F.3d at 1183.[4]  In *Woodmen of World Life Ins. Soc'y v. Manganaro,* 342 F.3d 1213 (10th Cir. 2003), the court of appeals explained:

> The legal certainty standard is very strict.  As a result, it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied. 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702, at 97-98 (1998).  There is a strong presumption favoring the amount alleged by the plaintiff.  *See Adams*, 225 F.3d at 1183 (noting that amount alleged in the complaint can alone be sufficient to satisfy showing that it is not legally certain the amount is less than the jurisdictional requirement); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) ("The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." (quotation omitted)). Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction. 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702, at 98-101 (1998).

*Id.* at 1216-17.  The same should be no less true of the larger jurisdictional amount required by § 1332(d)(2).

Estimation of the amount in controversy in this case is complicated by the fact that the Guzzardo Plaintiffs do not seek an award of money damages; they seek declaratory and equitable relief to avoid vulnerability to potential arbitration awards sought by Amway in an aggregate sum allegedly exceeding the requisite five-million-dollar jurisdictional amount.  But as the *Woodmen* panel explained, the court of appeals

---

[4] The Tenth Circuit has also said that under the diversity jurisdiction provisions of § 1332(a), "all the plaintiff needs to do is allege an amount in excess of $75,000 and he will get his way, unless the defendant is able to prove 'to a legal certainty' that the plaintiff's claim cannot recover the alleged amount." *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216–17 (10th Cir. 2003)).

finds persuasive the holding of other circuits that "look through to the possible
award resulting from the desired arbitration" to determine the amount in
controversy. *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998)
(quotation omitted); *see also The Barbers, Hairstyling for Men & Women, Inc. v.
Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997); *Webb v. Investacorp, Inc.*, 89 F.3d
252, 256 (5th Cir. 1996); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d
Cir. 1995).  Accordingly, the requisite jurisdictional amount will be satisfied in a
suit to compel arbitration unless it is legally certain that the stakes of the
arbitration are $75,000 or less.  *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838,
841 (7th Cir. 1999).

225 F.3d at 1317.

Amway argues that this court may not "look through" the Guzzardo Plaintiffs' pleaded

claims to consider the amount of the potential awards that may result from Amway's claims in

arbitration against the Guzzardo Plaintiffs and other members of the putative plaintiff class,

citing *Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009).  But *Vaden* was concerned with "looking

through" pleadings to find a basis for federal question jurisdiction beyond the four corners of a

well pleaded complaint.  That question does not arise here.

If a "legal certainty" is understood to be the "[a]bsence of doubt; accuracy; precision;

definite. The quality of being specific, accurate, and distinct," *Black's Law Dictionary* 225 (6th

ed. 1990)—as the *Woodmen* panel understood it, 225 F.3d at 1216 n.2—then such certainty as to

the legal deficiency of the Guzzardo Plaintiffs' alleged amount in controversy proves to be

lacking here.

The potential class is very large.

Amway's potential claims in arbitration are significant.

At no time has Amway asserted that in its extended effort to pursue its claims in

arbitration against the named Plaintiffs and others, its potential recovery from the *Guzzardo*

-6-

Plaintiffs and other putative class members will aggregate less than $5 million, and the facts relied upon by the Guzzardo Plaintiffs—including allegations set forth in Amway's own JAMS arbitration demand—suggest otherwise.[5]

Given the "strong presumption favoring the amount alleged by the plaintiff," buttressed by the facts now in the record, this court concludes that at this point, the Guzzardo Plaintiffs have shown that it is not a legal certainty that the amount in controversy falls short of an aggregate five million dollars, and that Amway's Rule 12(b)(1) motion as to the § 1332(d)(2) jurisdictional amount should be denied.

Amway's assertion that the Guzzardo Plaintiffs' amended complaint should also be dismissed under Rule 12(b)(1) for lack of a formal certification of the plaintiff class runs afoul of CAFA's express statutory language, which looks to the characteristics of the "proposed plaintiff classes" in making determinations of jurisdictional fact. *See* 28 U.S.C. §§ 1332(d)(1)(D), 1332(d)(3), 1332(d)(3)(E), 1332(d)(4)(A), 1332(d)(4)(B), 1332(d)(5)(B), 1332(d)(7); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) (stating that plaintiff's subsequent failure to make a showing of class numerosity does not divest the federal courts of subject matter jurisdiction; "the § 1332(d)(5)(B) limitation applies only to 'proposed' plaintiff classes (as opposed to classes actually certified or that go to trial)"). The language of § 1332(d)(8) speaks to this precise point: "This subsection shall apply to any class action *before or after* the entry of a class certification order by the court with respect to that action." (Emphasis added.)

---

[5]One related Amway arbitration award recently brought to the court's attention was in excess of *nine million dollars* as to one person.

Subject matter jurisdiction under § 1332(d) vests in this court with respect to the

Guzzardo Plaintiffs' proposed plaintiff class upon the filing of their amended complaint

satisfying § 1332(d)'s pleading requirements.  Congress drafted § 1332(d)(8) "to ensure that

courts have jurisdiction over putative class actions prior to determination on class certification."

*Salazar v. Avis Budget Group, Inc.*,  2008 WL 5054108, *6 (S.D. Cal. 2008).  Amway has cited

no legal authority to the contrary.  Even if Amway is correct that "a denial of class certification

negates subject matter jurisdiction under CAFA," (Amway 12(b)(1) Reply Mem. at 3),[6] that

problem has yet to arise in the context of this proceeding.[7]  Subject matter jurisdiction under

§ 1332(d) exists as to the Guzzardo Plaintiffs' proposed plaintiff class, even absent formal class

certification, and Amway's Rule 12(b)(1) motion should be denied on that basis as well.[8]

## II.  AMWAY'S MOTION TO STAY UNDER 9 U.S.C. § 3

The second motion is Amway's motion to stay the Guzzardo Plaintiffs' action in favor of

arbitration pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (2006 ed.).[9]  As delineated

---

[6]Courts  currently are divided on this point, *see, e.g.*, *Avritt v. Reliastar Life Ins. Co.*, 2009 WL 1703224, at *1-*2 (D.Minn. 2009), and cases cited therein.

[7]It should be noted that apart from the pleading with respect to the proposed plaintiff class under § 1332(d), as many as half of the named Guzzardo Plaintiffs are alleged to have citizenship diverse from that of the Amway defendants, and could very well be here by virtue of simple diversity jurisdiction under § 1332(a), although such is not explicitly pleaded in the amended complaint.

[8]Amway insists—and rightly so—that subject matter jurisdiction is "a threshold issue that must be decided first." (Amway Supp. Mem. at 1 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 100-01 (1998)).) But as noted above, Amway's assertions that the Guzzardo Plaintiffs' action should be dismissed or stayed on grounds of comity, *Brillhart* abstention, the Anti-Injunction Act, res judicata and/or collateral estoppel do not raise questions of subject matter jurisdiction under Rule 12(b)(1), and thus do not raise threshold issues that must be decided first.

[9]9 U.S.C. § 3 reads:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the

(continued...)

in the Pretrial Order governing the July evidentiary hearing on this motion, Amway's motion

raises three questions of fact: (1) whether there exists an agreement in writing between the

Guzzardo Plaintiffs and Amway calling for arbitration; (2) if so, whether the claims asserted in

this action by the Guzzardo Plaintiffs are referable to arbitration under the terms of that

agreement; and (3) whether Amway is in default in proceeding with the arbitration of claims

asserted in this action.

As it did with reference to its Rule 12(b)(1) motion to dismiss, Amway makes the

remarkable assertion that "there are no facts to find on Amway's motion to stay"; at the same

time, Amway acknowledges that "[t]o prevail, Amway must show three elements," indeed, the

same three questions as listed above.  (Amway Supp. Mem. at ix.)  To "show" the three essential

elements warranting a stay of proceedings under § 3 of the Federal Arbitration Act, Amway must

come forward with probative evidence of *facts* establishing each of those elements.  Proof of

essential elements requires *facts*, be they specifically disputed by an opposing party or not.[10]

Mere *ipse dixit* assertions by counsel do not suffice.

During the evidentiary hearing, the specific facts defining the historical relationship

---

[9](...continued)
action until such arbitration has been had in accordance with the terms of the agreement, providing the
applicant for the stay is not in default in proceeding with such arbitration.

[10]Amway relied on two declarations filed by counsel in support of its motion to stay, and its own Rules of
Conduct (annexed as Exhibit 1 to the amended complaint), as being sufficient to "show" the existence of an agreement in
writing to arbitrate with each of the twenty-eight Guzzardo Plaintiffs that was in effect at the times pertinent to the
Guzzardo Plaintiffs' pleaded claims.  Had those declarations detailed the paper trail as to each of the agreements with the
Guzzardo Plaintiffs in a methodical and comprehensive fashion, they may have sufficed as a factual footing for § 3's first
essential element.
   In any event, Fed. R. Civ. P. 43(c) expressly states that "[w]hen a motion relies on facts outside the record, the
court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions," and the
manner in which the facts are presented is left to the discretion of the court.  "Rule 43 . . . authorizes the use of oral
testimony for motions generally," *Seamons v. Snow*, 206 F.3d 1021,1025 (10th Cir. 2000), and it "gives the judge the full
menu—oral testimony, depositions, affidavits, and documents. He may use the one best suited to the occasion." *Stewart
v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986) (citations omitted)

between Amway (formerly Quixtar) and each of the named Guzzardo Plaintiffs were laid out on the record, with similarities and individual variations duly noted.  It appears after plowing through the multitude of materials presented to the court during that hearing, that each named Guzzardo Plaintiff at one time or another signed or otherwise assented to a writing drafted by Amway that included provisions calling for arbitration of certain disputes.

This court is not persuaded by Amway's recent assertion that there exist at least *two* "stand alone" arbitration agreements, one found in Amway's Rules of Conduct ("ROC") for its Independent Business Owners ("IBOs"), and one found in three paragraphs of various Amway registration forms.  (*See* Exhs. 1, 10, 15, 20, 23, 30, 34, 44, 45, 49, 50, 52, 53, 56, 57, 58, 59, 63, 71, 72, 75, 80, 81 & 82.)  Each of the Guzzardo Plaintiffs had *one* relationship with Amway as an IBO, and the various writings that each has executed and assented to—and has renewed in varying ways over a period of time—define the terms of that relationship.  As such, the writings are to be construed together as a single agreement in writing for purposes of § 3.

The court has examined those writings, and considered them in the historical context detailed through live testimony at the evidentiary hearing.  On the basis of the evidentiary record that now exists, this court finds that as to each of the named Guzzardo Plaintiffs, there exists a written agreement to arbitrate.  The particular components of each such agreement vary somewhat between the individual plaintiffs, and in every instance consist of more than merely the Amway ROC, but they share common terms concerning the conciliation and arbitration of disputes involving IBOs.

Under each existing composite written Amway "agreement to arbitrate" and Amway's arbitration rules, only "IBOs" are subject to arbitration.

-10-

There is no provision which even ostensibly commits a *former* IBO to arbitrate.  Because "IBO" is not "otherwise" defined for purposes of arbitration, the generic definition in Amway's ROC § 2.3 governs.  ROC § 2.3  states:

> 2.3 Independent Business Owner (IBO) shall refer to the individual(s) operating an IB pursuant to a contractual relationship with Quixtar, Inc., unless otherwise specified.

As the Guzzardo Plaintiffs point out, "operating an IB" is a present tense term.  Individuals who are no longer operating an Amway IB are not encompassed within that definition of "IBO."  *Cf. Bergen v. Baker*, 691 N.W.2d 770, 777 (Mich. Ct. App. 2004) (language in disclosure statement relates to present tense, not past tense).  Amway's definition of IBO that was in force at the time of each of the Guzzardo Plaintiffs' departure from Amway does not extend to make the written arbitration agreement expressly applicable to former IBOs.

The Guzzardo Plaintiffs point out that this stands in stark contrast to the articulated scope of other rules, such as ROC § 6.5 (non-competition/ nonsolicitation), which provides in part that "current and former IBOs must not use the Line of Sponsorship to sell, distribute, or promote competing products, services, or other business ventures, or otherwise interfere in the Quixtar business of other IBOs," and ROC § 6.5.2, which states that "[f]or purposes of this Rule 6.5, "IBO" means an IBO who is either currently registered or has been registered at any time within the past two calendar years."  Moreover, ROC § 6.5.11 explicitly provides for the survival of certain obligations, stating that "[a]n IBO's obligations under this Rule 6.5 shall survive and remain enforceable following the voluntary or involuntary resignation, non-renewal, or termination of that IBO's independent business."

The relevant ROC arbitration provisions (primarily ROC § 11) make no such reference to

former IBOs; neither do the registration forms and other writings Amway indentified as comprising the written agreement to arbitrate.

Even more telling is the fact that Amway's recently amended ROC (which do not apply to the Guzzardo Plaintiffs) explicitly include former IBOs in the arbitration process.  The 2008 Amway Global Rules (Exhibit List A, Exh. 100), expressly apply the Rule 11 arbitration obligation to both "current" and "former" IBOs:

> This Rule 11 applies, without limitation, to any claim or dispute against an IBO, *former IBO* or any such IBO's officers, directors, agents, or employees . . . . [Emphasis added.]

As the Supreme Court has already pointed out, "[a]bsent some ambiguity in the agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ( "[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties")).  And "nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement."  *Id.*

> The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so."  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). . . .  Because the FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement.  *Id.*, at 626, 105 S.Ct. 3346.  While ambiguities in the language of the agreement should be resolved in favor of arbitration, *Volt*, 489 U.S., at 476, 109 S.Ct. 1248, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.

-12-

> "Arbitration under the [FAA] is a matter of consent, not coercion." *Id.*, at 479, 109 S.Ct. 1248.

*Id.* at 293, 294 (citation omitted); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so").

As the Court explained more recently in *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896 (2009),

> Section 2—the FAA's substantive mandate—makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements upon the same footing as other contracts." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (internal quotation marks omitted). Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, "on application of one of the parties," to stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3.

*Id.* at 1901-02 (footnote omitted). Clearly, it is for the court to determine whether under the terms of their contract, the parties have made an enforceable agreement to arbitrate a particular dispute, and to enforce their agreement to do so, either by compelling arbitration under § 4 or staying litigation in favor of arbitration under § 3 of the FAA, as Amway now asks. Equally clearly, it is not for the court to require parties to arbitrate when they have not agreed to do so, or to grant a stay in favor of arbitration to which the parties have not consented.

As the Eighth Circuit recently observed in *Express Scripts, Inc. v. Aegon Direct Marketing Services, Inc.*, 516 F.3d 695, 699-700 (8th Cir. 2008):

> Before a district court may grant a motion to stay pending arbitration under

9 U.S.C. § 3, it "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 696 (8th Cir. 1994) (requiring district court to apply this principle before granting  motion to compel arbitration under 9 U.S.C. § 4); also *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). Thus, "the question 'whether the parties have a valid arbitration agreement at all' is for the court, not the arbitrator, to decide." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005), quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003); also *McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192,  1193-94 (8th Cir. 1997).

Thus, the law requires that a court make these determinations under § 3 of the FAA— excepting the essential elements of Amway's § 3 motion to stay from the operation of Amway ROC § 11.5.4, which provides that "disputes over the existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, may be submitted to and ruled on by the Arbitrator, unless *the relevant law requires that a court make such determination*," without regard to the purportedly mandatory effect of the permissive "may" found in § 11.5.4, at least as argued by counsel for Amway (*see* Amway Supp. Mem. at 7).[11]

---

[11]If, as Amway's counsel insists, "may" means *must* (*see* Amway Supp. Mem. at 7), and this court "lacks power to determine 'the existence, validity, interpretation, or scope' of the arbitration agreement," (*see id.* at 8), then it lacks the power to grant Amway's § 3 motion to stay, which depends upon precisely that judicial determination.

Even apart from the question of the necessity of a court finding § 3's essential elements, Amway's own rules administrator, Gary Vander Ven, testified with respect to ROC § 11.5.4 that "may" means *may*:

> Q        Yes. Now, again, in your role as head of the rules department, how have you construed that language as it relates to claims relating to validity, interpretation or scope of the agreement under which arbitration is sought, may be submitted ?

> A        Well, they may be submitted or they may not.  They can or they cannot.  It's either[-]or is the way I view it.

> Q        So they may be submitted to the arbitrator.  Can you articulate further what the other option is?

> A        Not submitting them to the arbitrator.
> * * * *
> Q        Can you explain what you mean by may not?

(continued...)

-14-

As Amway IBOs, each of the Guzzardo Plaintiffs had an agreement in writing to arbitrate disputes that may arise while *operating* an independent business as Amway IBOs, but under the terms of their agreement in writing, they did not agree to arbitrate issues with Amway that may arise after the termination of their relationship with Amway, when they were no longer "operating" as Amway IBOs.  The issues that Amway ostensibly seeks to arbitrate with the Guzzardo Plaintiffs simply fall beyond  the scope of their respective written agreements to arbitrate, and thus are not referable to arbitration for purposes of § 3 of the FAA.[12]

Because of Amway's failure to meet its burden to establish the essential elements justifying a stay of proceedings under § 3 of the FAA, Amway's motion for a stay of the Guzzardo Plaintiffs' class action lawsuit must be denied.

---

[11](...continued)

A           Well, if the parties don't wish to have an arbitrator rule on that, then they would not submit it.

(Transcript of Hearing, dated July 7, 2009, at 180:12-181:5 (Mr. VanDer Ven).)

[12]Given this construction of the parties' agreements, this court need not decide whether the agreements themselves are illusory or otherwise unenforceable under State law—or for that matter, whether the question of their validity is itself referable to arbitration, as Amway insists, *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006)—or whether Amway is collaterally estopped from asserting the enforceability of the agreements in the first instance in light of *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008).  Absent an explicit expression of intent otherwise, it is the court, rather than the arbitrator, who determines whether or not a dispute is within the scope of the parties' arbitration agreement. "Courts should not assume the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable evidence' that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

### III.  GUZZARDO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The calendaring of an evidentiary hearing was originally precipitated by the Guzzardo

Plaintiffs' motion for a preliminary injunction seeking an order barring Amway from enforcing

its arbitration agreements and arbitration rules against the Guzzardo Plaintiffs as former IBOs,

including but not limited to JAMS Case No. 1100057932, until further order of this Court.

> To obtain a preliminary injunction, the moving party must demonstrate:
> "(1) a likelihood of success on the merits; (2) a likelihood that the movant will
> suffer irreparable harm in the absence of preliminary relief; (3) that the balance of
> equities tips in the movant's favor; and (4) that the injunction is in the public
> interest."

*Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009)

(quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v.*

*Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008))).

> Moreover, "because a preliminary injunction is an extraordinary remedy, the right
> to relief must be clear and unequivocal."  *Greater Yellowstone Coal. v. Flowers*,
> 321 F.3d 1250, 1256 (10th Cir. 2003); *see also United States ex rel. Citizen Band
> Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d
> 886, 888-89 (10th Cir. 1989) (stating that a preliminary injunction "constitutes
> drastic relief to be provided with caution . . . [and] should be granted only in cases
> where the necessity for it is clearly established."); *Gen. Motors Corp. v. Urban
> Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) ("In general, a preliminary
> injunction . . . is the exception rather than the rule.") (quotations omitted).

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir.

2009).

### A. Likelihood of Success on the Merits

The Guzzardo Plaintiffs assail the validity and enforceability of Amway's written

arbitration agreements on several grounds, including lack of mutuality, or illusory promise, *see*

*Morrison*, 517 F.3d at 254-57, unconscionability, and collateral estoppel.  (*See, e.g.*, Plaintiffs'

Supplemental Memorandum in Support of Motion for Preliminary Injunction, filed April 29,

2009 (dkt. no. 405) (Pltfs' Supp. Mem."), at 2-67.)  This court having found that in each instance,

the parties' written agreements to arbitrate do not encompass post-termination disputes involving

former IBOs who are no longer operating an Amway "Independent Business," this court likewise

finds that the Guzzardo Plaintiffs have demonstrated a likelihood of success on the merits, at

least on that specific ground.

### B.  Threat of Irreparable Harm

*RoDa Drilling* explains that

> a plaintiff satisfies the irreparable harm requirement by demonstrating "a
> significant risk that he or she will experience harm that cannot be compensated
> after the fact by monetary damages." *Greater Yellowstone Coal. v. Flowers*, 321
> F.3d 1250, 1258 (10th Cir. 2003) (quoting *Adams v. Freedom Forge Corp.*, 204
> F.3d 475, 484-85 (3d Cir. 2000)) (emphasis omitted).  Purely speculative harm
> will not suffice, but rather, "[a] plaintiff who can show a significant risk of
> irreparable harm has demonstrated that the harm is not speculative" and will be
> held to have satisfied his burden.  *Id.*

552 F.3d at 1210.

> The Guzzardo Plaintiffs argue that irreparable harm
>
> necessarily flows from arbitrating a dispute under an unenforceable arbitration
> agreement or where the scope of the arbitration agreement does not encompass the
> dispute.  *See, e.g.*, *Maryland Casualty Co. v. Realty Advisory Bd. on Labor
> Relations*, 107 F.3d 979, 985 (2d Cir. 1997) (holding that the movant "would be
> irreparably harmed by being forced to expend time and resources arbitrating an
> issue that is not arbitrable, and for which any award would not be enforceable"),
> *accord Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 129
> (2d Cir. 2003); *Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759, 766 (N.D.
> Cal. 2008) (following *Maryland Casualty*).

(Pltfs' Supp. Mem. at 68.)  If the Amway arbitration agreements are found to be unenforceable

on any ground, including inapplicability to former IBOs, "then irreparable harm follows as a

matter of law."  (Guzzardo Plaintiffs' Supplemental Memorandum on the Existence of

Irreparable Harm, filed June 17, 2009 (dkt. no. 519) ("Pltfs' Supp. Harm Mem."), at 2.)  They

argue that "a party has no adequate legal mechanism to recover his or her time, energy, or

resources expended in a null arbitration or to recover for the involuntary relinquishment of the

right to trial by jury," citing to authority from the Second, Third and Eighth Circuits.  (*Id.* (citing

*Maryland Casualty*, 107 F.3d at 985; *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir.

1990) ("We hold, therefore, that the district court did not abuse its discretion or commit an error

of law in determining that [the plaintiff] would suffer irreparable harm if it were forced to submit

to the arbitrator's jurisdiction, if even just for a determination of the scope of that jurisdiction");

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("If a

court has concluded that a dispute is *non*-arbitrable, prior cases uniformly hold that the party

urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if

the threatened irreparable injury to the other party is only the cost of defending the arbitration and

having the court set aside any unfavorable award" (emphasis in original))).)

      Moreover, federal district courts in at least the First, Fifth, Sixth, Seventh,
and Ninth Circuits have followed the lead of the above-cited cases. *Graham v.
Smith*, 292 F. Supp. 2d 153, 159 (D. Me. 2003) (applying the Third Circuit's *per
se* irreparable harm rule); *Kellogg Brown & Root Servs., Inc. v. Altanmia
Commercial Mktg. Co.*, No. 07-2684, 2007 U.S. Dist. LEXIS 86285, *46-47 (S.D.
Tex. Nov. 21, 2007) (unpublished) (concluding that irreparable harm occurs when
a party is forced to arbitrate a non-arbitrable dispute and then seek judicial redress
at some later point) . . . ; *SEMCO, LLC v. Ellicot Machine Corp.*, No. 99-1928,
1999 U.S. Dist. LEXIS 10710, *8 (E.D. La. July 9, 1999) (unpublished) (applying
the Third Circuit's *per se* irreparable harm rule) . . . ; *Vestax Secs. Corp. v.
Desmond*, 919 F. Supp. 1061, 1074 (E.D. Mich. 1995) (applying the Third
Circuit's *per se* irreparable harm rule); *Interactive Brokers, LLC v. Duran*, No.
08-6813, 2009 U.S. Dist. LEXIS 11552, *17-18 (N.D. Ill. Feb. 17, 2009)
(unpublished) (following the Third and Eighth Circuit rule) . . . ; *Chicago Sch.
Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996

(N.D. Ill. 1999) ("Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes"); *Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759 (N.D. Cal. 2008) (applying the Second Circuit rule and holding that where an arbitration agreement did not apply to the plaintiff, being forced to arbitrate the claim would constitute "irreparable harm").

(*Id.* at 4.)  The Guzzardo Plaintiffs acknowledge that the Tenth Circuit has not yet addressed this precise issue.  (*Id.* at 3 n.1.)

Amway responds that "[b]ecause arbitration is favored, . . . the prospect that someone might have to undergo a favored process to resolve his or her dispute is not irreparable injury," (Amway's Opposition to the Guzzardo Plaintiffs' Motion for Preliminary Injunction, filed June 15, 2009 (dkt. no. 516) ("Amway Prelim. Inj. Opp."), at 45 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *United Paperworkers Int'l, Local No. 395 v. ITT Rayonier, Inc.*, 752 F. Supp. 427, 431 (M.D. Fla. 1990) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *Rollins, Inc. v. Garrett*, No. 6:05-CV-671-PCF-KRS, 2005 WL 2149293, at *3 (M.D. Fla. Sept. 6, 2005) (unpublished))), and that the Guzzardo Plaintiffs' alleged harm equates with money and therefore is not "irreparable."  (*Id.* at 46.)  "To establish irreparable injury from a threatened financial loss, then, 'there must be something uniquely threatening about the particular loss of money.'" (*Id.* (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000)).)

But in this particular context, courts have concluded that a district court's issuance of a preliminary injunction "briefly freezing the parties' dispute resolution activities until it determines arbitrability, is surely appropriate."  *McLaughlin Gormley King Co.*, 105 F.3d at 1194.  The Guzzardo Plaintiffs have proffered persuasive authority suggesting that the time,

energy, costs and fees associated with defending an unnecessary arbitration, as well as the potential cost of setting aside any unfavorable arbitration result, rise to the level of "irreparable harm."  Given that proposition, expressed in multiple decisions from other Circuits, this court concludes that unless and until the Tenth Circuit holds otherwise, the injury to a party who is forced to submit to arbitration when it did not agree to do so constitutes *per se* irreparable harm for purposes of preliminary injunctive relief.

Having found in favor of the Guzzardo Plaintiffs as to likelihood of success on the merits of arbitrability of the underlying disputes, this court likewise finds that they have met their burden of demonstrating that the propect of defending arbitration proceedings as to issues they did not agree to arbitrate constitutes "irreparable harm" warranting preliminary injunctive relief.

### C.  The Balance of the Equities

Granting the relief now requested by the Guzzardo Plaintiffs accords with the historic purpose of the preliminary injunction, which is to "preserve the relative positions of the parties until a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc) (stating that the purpose of a preliminary injunction "is to assure that the non-movant does not take unilateral action which would prevent the court from providing effective relief to the movant should the movant prevail on the merits").  For purposes of preliminary injunctive relief, the status quo to be preserved is the "last peaceable uncontested status existing between the parties before the dispute developed," *Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005)—in this case, the status that existed before Amway precipitously filed simultaneous demands for JAMS arbitration and a Michigan state

court lawsuit against the Guzzardo Plaintiffs seeking to compel arbitration.

Amway argues that "enjoining Amway from further arbitrations is nothing less than a taking of its bargained-for contractual rights to arbitration."  (Amway Prelim. Inj. Opp. at 47 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (stating that "a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials").)

But a preliminary injunction preserving the status quo pending a final determination on the merits is just that—injunctive relief granted only *on a preliminary basis*.  If the Guzzardo Plaintiffs ultimately prevail on the issue of arbitrability, Amway will have lost no "bargained-for contractual rights to arbitration" because it had none.  If Amway ultimately prevails on that issue, the preliminary injunction will be dissolved, and Amway may proceed to exercise those rights.

This court finds that the balance of the equities weighs in favor of preliminary injunctive relief maintaining the pre-dispute status quo and precluding further arbitration proceedings involving disputes that the Guzzardo Plaintiffs as former Amway IBOs did not agree to arbitrate.

### D.  The Public Interest

Amway argues that preliminary injunctive relief preserving the status quo would not be in the public interest because of considerations of comity between federal and state courts, the public policy favoring arbitration, the discouragement of forum-shopping, and the protection of non-party Amway IBOs from the predations of competitors such as Monavie.  The Guzzardo Plaintiffs respond that "[t]here is a strong judicial policy against compelling arbitration when the parties have not agreed to arbitrate a dispute."  (Pltfs' Supp. Mem. at 70 (citing *World Group Securities v. Tu*, No. 03-2609, 2003 U.S. Dist. LEXIS 25819, *26 (C.D. Cal. July 21, 2003)

(unpublished); *Kellogg Brown & Root Servs. v. Altanmia Commer. Mktg. Co. W.L.L.*, No. 07-2684, 2007 U.S. Dist. LEXIS 86285, *60-61 (S.D. Tex. Nov. 21, 2007) (unpublished) (holding that enjoining an arbitration agreement does not disserve the public interest where the parties did not agree to arbitrate a dispute)).)  Furthermore, they assert, "the public interest is advanced by a full and final resolution of the enforceability of the challenged rules in one court, rather than the same issues being litigated over and over again in court after court across the county."  (*Id.*)  "The public interest is also advanced by preventing parties from wielding their arbitration processes as a weapon to harass, intimate, and ultimately bankrupt their opponents."  (*Id.*)

This court is not persuaded that considerations of comity and forum-shopping weigh against preliminary injunctive relief in this case, particularly where Amway commenced its proceeding to compel arbitration in its chosen forum, and where that court has apparently stayed further action pending substantive rulings by this court.  Nothing about the preliminary injunction sought by the Guzzardo Plaintiffs precludes Amway or its existing IBOs from seeking their own judicial remedies—particularly injunctive relief—against "raiding" by other competitors.

The Supreme Court has made clear that the general policy favoring arbitration does not trump the specific terms of arbitration agreements, and this court concludes that the public interest is better served by giving effect to those contractual obligations—including the limits on their scope concerning arbitrable issues, as the movants suggest.

The Guzzardo Plaintiffs having demonstrated that preliminary injunctive relief would serve the public interest, the four prerequisites for the issuance of a preliminary injunction have

thus been satisfied.[13]  The Guzzardo Plaintiffs' motion for a preliminary injunction should be granted.

Because the parties have not addressed the requirement of Fed. R. Civ. P. 65(c) that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," this court reserves ruling on the nature and amount of the security to be required until counsel have had adequate opportunity to brief and argue the question.

**CONCLUSION**

For the reasons explained above, this court concludes that it has subject matter jurisdiction of the Guzzardo Plaintiffs' Amended Class Action Complaint under 28 U.S.C. §1332(d), that the parties' respective written agreements to arbitrate do not extend to the

---

[13]Amway raised several "affirmative defenses" to the motion for preliminary injunction, including "estoppel, unclean hands, consent, or laches." (Pretrial Order re: July 7, 2009 Evidentiary Hearing, filed July 2, 2009 (dkt. no. #), at 6.)  But Amway appears to misapprehend the meaning and purpose of the defenses it has raised.

For example, the "unclean hands" doctrine means, in general, that equity will not aid a party whose conduct has been "unlawful, unconscionable, or inequitable." *Houston Oilers, Inc. v. Neely*, 361 F.2d 36, 42 (10th Cir. 1966).

> The maxim [of "unclean hands"], considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected to the matter in litigation, and with which the opposite party has no concern.

*Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004) (quoting 5 John Norton Pomeroy & Spencer W. Symons, *A Treatise on Equity Jurisprudence* § 399, at 94-95 (5th ed. 1994)).  The fact that one or more of the Guzzardo Plaintiffs may have subsequently entered into agreements with Monavie or other competitors having terms strikingly similar to those they challenge as unconscionable in their Amended Class Action Complaint in this case does not reflect inequitable misconduct on their part arising out of their transactions with Amway as Amway IBOs.  Inconsistency does not equate with inequity.  The doctrines of laches and consent likewise find no application in the context of this litigation.

Amway argues that the Guzzardo Plaintiffs are estopped to deny the existence and validity of their arbitration agreements with Amway because of the remuneration they received while operating as Amway IBOs.  This court need not decide that question at this point, having found that such agreements exist based upon the parties' mutual assent.  But estoppel does not serve to expand the scope of those arbitration agreements beyond their express terms.

-23-

Guzzardo Plaintiffs as former Amway IBOs and Amway's post-termination disputes, and that the Guzzardo Plaintiffs have demonstrated (1) a likelihood of success on the merits; (2) a likelihood that they will suffer irreparable harm in the absence of preliminary relief preserving the status quo; (3) that the balance of equities between these parties tips in their favor; and (4) that a preliminary injunction is in the public interest.  The Guzzardo Plaintiffs are entitled to a preliminary injunction precluding Amway from enforcing its arbitration agreements and arbitration rules against the Guzzardo Plaintiffs as former IBOs as to disputes involving alleged conduct after their termination as Amway IBOs, including but not limited to proceeding with JAMS Case No. 1100057932, until further order of this Court.

Therefore,

**IT IS ORDERED** that the Amway defendants' Motion to Dismiss Consolidated-Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) (dkt. no. 337), is hereby DENIED;

**IT IS FURTHER ORDERED** that the Amway Defendants' Motion to Motion to Stay Pursuant to Section 3 of the Federal Arbitration Act (dkt. no. 416), is hereby DENIED; and

**IT IS FURTHER ORDERED** that the Guzzardo Plaintiffs' Motion for a Preliminary Injunction (originally filed in 2:09cv00259BSJ on April 1, 2009),[14] is hereby GRANTED; counsel for the Guzzardo Plaintiffs shall prepare and submit a suggested form of preliminary injunction within ten (10) days of the entry of this Memorandum Opinion & Order.  The court hereby reserves on the question of the requirement of a bond or other security pursuant to Fed. R.

---

[14]It appears that the Guzzardo Plaintiffs' Supplemental Memorandum (dkt. no. 405) has been docketed as a "supplemental motion" for a preliminary injunction. It is in fact only a memorandum.

Civ. P. 65(c).

      DATED this **26** day of October, 2009.

                         BY THE COURT:

                         Bruce S. Jenkins
                         United States Senior District Judge